**KEITH v. SCHWARTZ.**

No. 28767.

St. Louis Court of Appeals.

Missouri.

Jan. 19, 1954.

Motion for Rehearing or for Transfer to
Supreme Court Denied and Opinion
Modified Feb. 12, 1954.

Moser, Marsalek, Carpenter, Cleary &
Carter, J. C. Jaeckel, St. Louis, for ap-
pellant.

John C. Shepherd, St. Louis, Sievers,
Reagan & Schwartz, St. Louis, of counsel,
for respondent.

ANDERSON, Presiding Judge.

Plaintiff, Alice Keith, instituted this ac-
tion for the damage to her automobile
as a result of a collision between said
car and one driven by defendant, Dave
Schwartz. Defendant filed a counter-
claim for the damage to his automobile.
The trial below resulted in a verdict for
plaintiff on her cause of action and against
defendant on his counterclaim. From the
judgment on said verdict, defendant has
appealed.

The accident occurred on April 9, 1950,
at the intersection of Semple and Wabada
Avenues in the City of St. Louis. Semple
Avenue is a north and south street. Wa-
bada Avenue runs east and west. Both
streets are about thirty feet wide and in-
tersect at right angles. Wabada is straight
and level east of Semple, while the latter
is slightly downgrade to the south from
Wabada, and slightly upgrade to the north
from that street. The neighborhood is
residential in character. The collision oc-

curred about 4:00 o'clock in the afternoon. A hard rain was falling at the time. Plaintiff at the time was driving a 1949 model Dodge automobile which was equipped with fluid drive, and was proceeding north on Semple Avenue, about eight feet from the east curbline. Defendant was driving a 1946 Cadillac, traveling west on Wabada. Plaintiff testified:

"I was going, oh, about twenty over Semple, and when I came to the intersection I came to a rolling stop, well, and then I started up."

When asked at what speed she started across the intersection, plaintiff replied: "It couldn't have been over ten miles an hour, I don't know, in those fluid drives, they are very slow on pickup, it just starts off in a walking speed, you might say, and as you gradually go along, it picks up speed."

Plaintiff further testified that as she approached the intersection she looked east on Wabada but did not see any automobile approaching from that direction. She stated she could see "probably thirty or fifty feet," east on Wabada, and that her car was moving between three and five miles per hour at that time.

Plaintiff also testified that when she reached the south curb line of Wabada she came to a rolling stop. At that time her car was traveling from three to five miles an hour. She then looked both ways through the windshield, first to the right and then to the left. It was pouring rain and plaintiff looked through that part of the windshield which had been cleaned by the windshield wiper. She looked first to the right, and could see as far as the alley midway between Arlington and Semple Avenues. She saw no automobiles approaching. It was daylight at the time. There was no fog or smoke in the atmosphere.

Plaintiff testified that she proceeded about fifteen feet into the intersection when the right side of her automobile was struck by the defendant's car. Her car came to rest after the accident in the northwest corner of the intersection. She stated she did not see the defendant's car at any time prior to the collision. Plaintiff proceeded straight across the intersection without swerving in either direction. She did not sound her horn at any time.

Fred H. Woerner testified that at the time in question he was standing on the front porch of his home located on the east side of Semple Avenue, about 120 feet south of Wabada, watching for his son who was coming by in an automobile to pick him up. While thus engaged, he saw plaintiff's automobile coming north on Semple Avenue. He stated that said car was at the time traveling about twenty miles per hour. He did not continue to watch the automobile after it passed his home, but heard the sound of a horn and the crash of the collision. The sound of the horn and the crash were instantaneous. He then looked north and saw plaintiff's automobile on the sidewalk. Because of the rain he did not go to the scene of the accident.

Defendant was called as a witness by the plaintiff. He testified that he drove westwardly on Wabada from Arlington at a speed of between fifteen and twenty miles per hour. As he approached Semple Avenue he reduced his speed, and when he reached a point 25 or 30 feet east of said street he was driving at a speed of about ten to fifteen miles per hour. He stated that he looked south on Semple when his car was about thirty feet east of the intersection, when he was moving about fifteen miles per hour, and saw plaintiff's automobile, which was about thirty feet south of the intersection and moving north at a speed of about twenty miles per hour. He further testified that just before his automobile reached the east curbline of Semple Avenue he saw that plaintiff was going to drive into the intersection, whereupon he sounded his horn and applied his brakes in an effort to stop. He stated plaintiff at the time had not entered the intersection; that plaintiff continued on at about twenty miles per hour. The speed of his car at

the time of impact was about five miles per hour. He stated that his automobile was north of the center of Wabada when the vehicles collided, and that he did not swerve either to the right or to the left. Defendant further testified:

"Q. I want to know, driving your automobile at a speed of fifteen miles an hour, with the conditions as they existed at that time, at the time of the accident, how many feet forward would that automobile go while swerving five feet to the left? * * * A. I don't know; I imagine about five feet * * *. I applied my brakes before I approached the intersection to reduce my speed, and I saw she was coming on through, and I applied my brakes immediately and blowed my horn, but she kept coming and I applied my brakes.

"The Court: Q. By that second application of brakes you mean when you reached the east curbline, when you saw her at the intersection, when you reached the east curbline, is that what you mean? A. Yes."

The front of defendant's car struck the right rear half of plaintiff's automobile. It was stipulated that the damage to plaintiff's automobile amounted to $666.96, and that the damage to defendant's car was $326.67.

Plaintiff submitted her case under the humanitarian doctrine, predicating recovery upon a finding by the jury that the defendant could have swerved his automobile to the left and thereby have prevented the collision. Defendant submitted his counterclaim on the same theory.

Appellant's first point is that the court erred in not sustaining defendant's motion for a directed verdict. In support of this contention, it is urged that plaintiff's case, under the humanitarian doctrine, could only rest on speculation and conjecture for the reason that plaintiff did not, in her testimony, locate the position of defendant's automobile at any time

prior to the collision. In making this argument appellant contends that the testimony of defendant, which did fix the position of defendant's car during the time plaintiff approached the point of collision, cannot be considered because it is contrary to plaintiff's own testimony. The further point is made that even if defendant's testimony be considered, it is insufficient to make a case under the humanitarian doctrine.

It is clear that if defendant's testimony is not considered, plaintiff failed to make a case for the jury. Miller v. Wilson, Mo.App., 288 S.W. 997. The first question then for determination is whether the testimony of defendant is in fact clearly contradictory to that given by plaintiff, and thus unavailable to plaintiff under the rule announced by this court in Mollman v. St. Louis Public Service Company, Mo. App., 192 S.W.2d 618.

Plaintiff testified that when she approached Wabada Avenue she looked to her right but did not see any automobile approaching, though she could see thirty or fifty feet in that direction, and could see to the alley when she reached the intersection. Does this amount to positive testimony amounting to a judicial admission on plaintiff's part that there were no automobiles on Wabada within that distance, so as to make unavailable the testimony of defendant that he was in fact within thirty feet of the intersection at the time? We think not. In our judgment, the testimony is only conclusive as to the fact that plaintiff did not see the defendant, and not that he was not there.

█ The rain which was falling at the time had assumed the character of a downpour, and plaintiff could only see through that portion of the windshield which was cleared by the windshield wipers, which facts could explain plaintiff's failure to observe defendant's car at the time. Her testimony, therefore, that she failed to see defendant's car, could be found to be consistent with defendant's testimony. Under the circumstances, we believe the

defendant's testimony, as to his movements just prior to the collision, was available to plaintiff in making out her case.

■ The next question is whether plaintiff made a humanitarian case, as submitted. The evidence shows that when defendant reached a point thirty feet east of the east curbline of Semple Avenue he observed the plaintiff's car approaching at a speed of about twenty miles per hour. Defendant at the time was traveling about fifteen miles per hour. Defendant continued, and when his automobile had about reached the intersection he observed that plaintiff was going to drive into the intersection. Plaintiff had slackened the speed of her car as she approached Wabada until her speed was from three to five miles per hour; then, after failing to observe defendant's automobile, she entered the intersection and drove fifteen feet to the point of collision. The right side of plaintiff's automobile was at all times approximately eight feet from the east curbline of Semple Avenue.

The defendant, at the time he realized that plaintiff was going to drive into the intersection, sounded his horn and applied the brakes in an effort to stop. He did not swerve in either direction. Defendant's car struck the right rear half of plaintiff's automobile.

In our judgment, the foregoing facts make a case for the jury. From said facts it could reasonably be found that, had defendant swerved to the left plaintiff could have escaped, and whether defendant's failure to swerve constituted negligence was, under the evidence, a question for the jury. Kasperski v. Rainey, Mo. App., 135 S.W.2d 11.

■ Instruction No. 4, as submitted by defendant, predicated a recovery by defendant on his counterclaim if the jury found plaintiff negligent under the humanitarian rule, and that such negligence "directly caused *or contributed to cause* the collision * * * even though you may find and believe from the evidence defendant was guilty of negligence directly contributing to cause said collision." The court struck from said instruction the phrase "or contributed to cause", and gave the instruction in its modified form. The appellant complains of the court's action in striking said phrase from said instruction, contending that the effect of the court's action was to advise the jury that defendant could not recover on his counterclaim unless the collision was brought about by the sole negligence of plaintiff, and injected contributory negligence on the part of defendant as a defense, which is not proper in a humanitarian case.

There was no suggestion in the evidence that there was any contributing cause of the collision other than the negligence of the defendant, and as to that the jury were clearly advised that such negligence, if found to exist, was not a defense to the cause of action submitted. It therefore appears that appellant's complaint is without merit.

We find no error in the record. The judgment of the trial court is affirmed.

BENNICK and RUDDY, JJ., concur.